DREW v. VALENTINE.

(Circuit Court, N, D. Florida.   December 24, 1883.)

1. GOVERNMENT LANDS—HOW TITLE TO BE DIVESTED.
    There is no way for titles to land to be divested out of the United States ex-
    cept in strict pursuance of some law of the United States; and, as no statute of
    limitations runs against the United States, occupancy and possession alone,
    even for a great length of time, cannot ripen into title as against the United
    States.
2. SAME—EFFECT OF FRAUDULENT SALE OF LAND NOT SUBJECT TO ENTRY.
    No sale of land, not subject to entry by the receiver at a land-office, can di-
    vest either the legal or equitable title out of the United States.   The act of
    congress of June 15, 1844, does not cure such sales, as that act was only intended
    to embrace such lands as were subject to entry.

In Equity.
*Fleming & Daniel* and *Jno. T. Walker,* for complainant.
*Horatio Bisbee, Jr.,* for respondent.

SETTLE, J.   I have examined this case with an earnest desire to
find something in the record to support the claim of the complain-
ants; for I confess I have no sympathy with those who are ready
and willing to take advantage of the ignorance or mistakes of others,
and to appropriate to their own use property which has been greatly
enhanced in value by the labor of others.   But, whatever my feelings
may be upon a moral aspect of the case, I am bound by well-estab-
lished principles of law and equity, and must announce such judg-
ments and decrees as they dictate.   An examination of the statutes
and the decided cases convinces me that there is no way for titles to
land to be divested out of the United States except in strict pursu-
ance of some law of the United States; and as no statute of limita-
tions runs against the United States, occupancy and possession alone,
even for a great length of time, cannot ripen into title as against the
United States.

It cannot be claimed that the transactions between Goff and the
receiver at St. Augustine divested either the legal or equitable title
out of the United States, for the reason that the lands were not sub-
ject to entry; but it is claimed that the act of congress of June 15,
1844, cured that defect, and vested an equitable title in Goff.   After
an examination of the statute, I am satisfied that it was only in-
tended to embrace such lands as were subject to entry.

The objection that the statute could not embrace these lands, be-
cause there was no evidence in the general land-office that applica-
tion for entry was ever made, is not tenable, for the commissioner, in
his letter to Hon. J. J. Finley, states that such entries are to be found
in the general land-office; but the insurmountable obstacle that the
lands were not subject to entry still presents itself.

The complainants allege that the Valentine scrip can only be lo-
cated on unoccupied and unappropriated lands, and that the lands in

controversy have been occupied by them, and by those under whom they claim, for more than 40 years, and have been greatly improved in value. The difficulty in the way of the complainants is that their occupancy, not being under law, has conferred upon them no legal or equitable estate, and they cannot be heard to question the title of one who claims under a patent from the United States. While the complainants cannot be heard to question the Valentine title, it would seem that the government might well inquire, by direct proceedings, how one with authority to locate on unoccupied lands should be permitted, at the price of $1.25 per acre, to locate on lands in the heart or the suburbs of a city.

The demurrer must be sustained and the bill dismissed.